# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **KRISTINA ROSSITER,** | **CASE NO. 5:18-CV-01421** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **LIFE INSURANCE COMPANY OF NORTH AMERICA,** | **MEMORANDUM OF OPINION AND ORDER** |
| **Defendant.** | |

This matter is before the Court on cross-motions for judgment on the administrative record filed by Plaintiff Kristina Rossiter ("Ms. Rossiter") and Defendant Life Insurance Company of North America ("LINA"). (Doc. Nos. 21, 22.) On January 14, 2019, the parties filed simultaneous briefs in opposition. (Doc. Nos. 23, 24.) Ms. Rossiter filed a supplemental brief on January 21, 2019, to which LINA responded on January 28, 2019. (Doc. Nos. 27, 28.) On February 11, 2019, the parties submitted proposed findings of fact and conclusions of law. (Doc. Nos. 29, 30.) For the following reasons, Ms. Rossiter's motion for judgment on the administrative record is GRANTED, and LINA's motion for judgment on the administrative record is DENIED.

## I. Background

### a. Factual Background

#### i. The Plan

Ms. Rossiter worked as a Business Development Manager for the Sealed Air Corporation ("Sealed Air"). (Administrative Record ("AR"), Doc. Nos. 20-1, 20-2, at 1288.) Sealed Air offered a welfare benefit plan (the "Plan") governed by the Employee Retirement Income Security Act of

1974 ("ERISA") in which Ms. Rossiter participated.  The Plan provides long-term disability ("LTD")

benefits through a policy and contract of insurance issued by LINA (the "Policy").  (AR 2102-33.)

The Policy provides that LINA will pay LTD benefits if an employee becomes disabled while

covered.  (AR 2113.)  Before benefits will be paid, however, the employee "must provide the

Insurance Company, at his or her own expense, satisfactory proof of Disability."  (AR 2113.)  Under

the Policy, disability is defined as follows:

> **Definition of Disability/Disabled**
> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
> 1.      unable to perform the material duties of his or her Regular Occupation; and
> 2.      unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
> 1.      unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
> 2.      unable to earn 80% or more of his or her Indexed Earnings.

(AR 2108.)

The Policy authorizes LINA to reduce an employee's LTD benefits by the amount of any

Social Security disability benefits the employee receives and to reduce the employee's benefits if the

employee refuses to participate in a Social Security Assistance Program designed to help the

employee obtain Social Security disability benefits.  (AR 2114-15.)  The Policy also provides LINA

the right to physically examine any person with a pending claim.  (AR 2119.)

An employee's benefits terminate as of the date that LINA determines the employee is not

disabled.  (AR 2118.)  Benefits also end on "the date the Employee fails to cooperate with the

Insurance Company in the administration of the claim," including providing "any information or

documents needed to determine whether benefits are payable or the actual benefit amount due." (AR 2118.)

### ii. History of Ms. Rossiter's Disability and LTD Benefits

Due to a combination of health issues, Ms. Rossiter stopped working at Sealed Air on July 28, 2013. (AR 3.) On August 7, 2013, Ms. Rossiter's rheumatologist, Dr. James Goske, explained that Ms. Rossiter suffered from "psoriatic arthritis which has involved multiple joints but principally the knees and hands," "fibromyalgia contributing to her chronic pain for which she has been on multiple medications," and "chronic back pain related to several thoracic spine surgeries done at the Cleveland clinic." (AR 1800.) According to Dr. Goske, as a result of the "combination of psoriatic arthritis, fibromyalgia, and degenerative disc disease in the spine," Ms. Rossiter was disabled from employment. (AR 1800.) Ms. Rossiter's primary care physician, Dr. Jeffrey Kile, and her pain management physician, Dr. Arsal Ahmad, agreed that Ms. Rossiter's condition would not permit her to return to work. (AR 1879, 1926, 1985.) As a result, LINA approved Ms. Rossiter's claim for LTD benefits on December 19, 2013, with benefits commencing effective January 27, 2014. (AR 483-84.)

About a year and a half later, in July 2015, LINA requested Ms. Rossiter's current medical information to determine her continuing eligibility for LTD benefits. (AR 718-19.) Medical records from that period indicated that Ms. Rossiter was still severely limited. For example, on May 21, 2015, Dr. Goske saw Ms. Rossiter for her psoriatic arthritis. (AR 1348.) During the exam, Dr. Goske found that Ms. Rossiter was "uncomfortable due to pain," had an antalgic gait and poor grip, and was suffering from bilateral synovitis and swelling, dactylitis in certain fingers and toes, and swelling in her metacarpophalangeal ("MCP") joints. (AR 1350-51.) Further, on July 28, 2015, Dr. Kile recorded that Ms. Rossiter "[h]as moderate synovitis and mild swelling in her extremities. She stands

and walks with a great deal of pain using a cane. She is unable to sit long without moving to change position for comfort. Reaching for objects is done with pain. Lifting even light objects and gripping things is done with discomfort." (AR 1319.) Dr. Kile's exam notes concluded that Ms. Rossiter had "[s]evere psoriatic arthritis and fibromyalgia with chronic pain creating significant disability." (AR 1319.) That same day, Dr. Kile also completed a Physical Ability Assessment for Ms. Rossiter, which noted that she could occasionally sit, stand, walk, and lift and carry up to ten pounds, but could not do so "to a level consistent with any type of work." (AR 1421-22.)

Despite these assessments by her treating physicians, LINA terminated Ms. Rossiter's LTD benefits on August 13, 2015. (AR 688-91.) On February 5, 2016, Ms. Rossiter appealed LINA's decision and submitted additional documents in support of her disability claim, including letters from Dr. Kile and Dr. Goske wherein they opined that employment was not possible. (AR 1284-86, 1304-05, 1309-10.) Specifically, Dr. Goske wrote:

> I would note that a minority of patients with psoriatic arthritis are bad enough to require the use of Biologics which carry the risk of life-threatening infection as well as considerable cost. This is an indirect measure of the severity of her psoriatic arthritis. Despite these medications she has had persistent pain and swelling reflecting ongoing inflammation which is documented by lab studies. This degree of pain and swelling and inflammation is accurately reflected in a list of activities of daily life that she can no longer perform. . . .
>
> As a board certified rheumatologist, my opinion is that all of this adds up to a major loss of function of her upper extremities, and especially the hands. I consider her to be totally disabled from employment of any nature.

(AR 1310.) In his letter, Dr. Kile similarly opined that Ms. Rossiter's condition prevented her from working and specifically noted her frequent need to recline to manage her pain. (AR 1304-05.) Ms. Rossiter also submitted the results of a Functional Capacity Evaluation ("FCE") conducted on November 16, 2015. (AR 1299-1303.) The FCE found that Ms. Rossiter did not meet the minimum

functional capacity requirements for standing, sitting, or walking, that she was not capable of lifting or carrying anything, and that she was unable to return to work. (AR 1300-02.) After receiving Ms. Rossiter's appeal, LINA reversed the denial and reinstated Ms. Rossiter's benefits on May 16, 2016. (AR 326.)

Five months later, LINA again requested additional medical information from Ms. Rossiter, and on November 23, 2016, LINA terminated her benefits for the second time. (AR 655-58, 667-68.) This time, Ms. Rossiter's claim was evaluated under the "any occupation" definition of disability, as her LTD benefits had been payable for more than twenty-four months by that point. (AR 655-58.) Ms. Rossiter filed another appeal, which included the results of a new FCE conducted on January 25, 2017. (1003-06.) The FCE again found that Ms. Rossiter did not meet the minimal standing, sitting, and walking requirements. (AR 1004.) It also provided that she was capable of lifting only three pounds and not capable of carrying anything and concluded she "is currently unable to return to work in any capacity." (AR 1004-06.)

Dr. Kile, Dr. Goske, and Dr. Ahmad all wrote letters supporting Ms. Rossiter's claim as well. (AR 1126-30.) In his letter, Dr. Goske expressed disbelief that her benefits would be terminated, noting the multitude of conditions (*i.e.*, psoriatic arthritis, fibromyalgia, and degenerative disc disease) contributing to her pain and physical limitations. (AR 1126.) He also wrote that her condition had worsened over the last couple of years. (AR 1126.) Likewise, Dr. Kile concluded that Ms. Rossiter was not employable based on his "extensive history" of care. (AR 1127-28.) In addition, he noted that "there is no reasonable medical expectation" that her condition would change. (AR 1128.) Dr. Ahmad opined that his pain management treatment had not improved her "from a functional standpoint" and that he agreed with the most recent FCE. (AR 1129-30.) On June 2, 2017,

based on a review of Ms. Rossiter's appeal, LINA once again reversed its earlier decision and reinstated Ms. Rossiter's benefits.  (AR 635.)

After the reinstatement of benefits, Ms. Rossiter's medical records show she continued to suffer from the same limiting conditions.  For instance, on December 13, 2017, Dr. Kile observed that Ms. Rossiter moved "slowly with a shuffled gait" using a walker, had swelling in her hands, and had difficulty manipulating papers that he handed her.  (AR 1002.)  He also recorded his assessment of her condition, noting "[p]soriatic arthritis-still significant synovitis and impaired movement and ambulation as a result."  (AR 1002.)  In addition, on October 27, 2017, Ms. Rossiter's rheumatologist, Dr. David Richter,[1] found that Ms. Rossiter had a poor grip and an antalgic gait and suffered from "MTP joints bilateral forefoot swelling," "exquisite squeeze mtp tenderness," "mild mcp swelling," and "left 5 finger dactylitis."  (AR 1097.)  Dr. Richter did note, however, that Ms. Rossiter's symptoms were "out of proportion to objective findings."  (AR 1097.)[2]  On December 1, 2017, Dr. Richter observed that Ms. Rossiter was "uncomfortable due to pain" and "move[d] very slowly on and off [the] exam table."  (AR 1102.)  He also opined that Ms. Rossiter had a poor grip and joint tenderness, but commented that "[t]here is probably less synovitis since treatment with Cosentyx," which Ms. Rossiter had recently started.  (AR 1102.)

On December 29, 2017, although it had only been seven months from Ms. Rossiter's last reinstatement of benefits, LINA terminated her benefits for the third time.  (AR 595-97.)  Ms. Rossiter appealed this decision on April 13, 2018.  (AR 833-35.)  As part of her appeal, Ms. Rossiter submitted the results of another FCE, which was conducted on March 14, 2018.  (AR 837-39.)  Consistent with

---

[1] Dr. Richter took over care for Ms. Rossiter after Dr. Goske retired.
[2] This statement is similar to previous observations Dr. Richter made in exam notes from August 2, 2017 and September 6, 2017.  (AR 885, 891.)

her first two FCEs, the March 14, 2018 FCE found that Ms. Rossiter did not meet the requirements for standing, sitting, or walking. (AR 837.) She was also not capable of lifting, carrying, pushing, or pulling anything, and the FCE concluded that she was unable to return to work in any capacity. (AR 837-39.) In addition, the FCE provided that Ms. Rossiter was a "high complexity patient with vast deficit." (AR 839.) This FCE differed slightly from a Physical Ability Assessment completed by Dr. Ahmad on January 5, 2018, in which he found that Ms. Rossiter could occasionally stand, sit, walk, lift and carry up to ten pounds, and push and pull up to five pounds. (AR 1151-52.) However, that same day, Dr. Ahmad also concluded that Ms. Rossiter could not return to work due to her chronic pain, which is consistent with the FCE's conclusion that Ms. Rossiter could not return to work in any capacity. (AR 1150.)

Ms. Rossiter's appeal also included letters from Dr. Ahmad and Dr. Richter, who both opined that her condition prevented her from returning to work in any capacity. (AR 846-47.) Dr. Ahmad also noted his agreement with the FCE conducted on March 14, 2018 based on his continued evaluation of Ms. Rossiter. (AR 846.) Ms. Rossiter supplemented her appeal on April 20, 2018 with additional materials from Dr. Kile as well. (AR 798.) Those materials included another letter from Dr. Kile in which he indicated that the most recent FCE supported his own opinion regarding Ms. Rossiter's disability formed after fifteen years of treating her. (AR 799.) He also criticized LINA for basing its decision on specific instances of transient improvement in certain diseased joints, while ignoring other information that made it clear Ms. Rossiter was still disabled. (AR 799.)

Ms. Rossiter's initial appeal letter on April 13, 2018 also asserted that LINA's decision was inappropriate in light of the fact that it failed to consider Ms. Rossiter's award of Social Security disability benefits, which was evidence that she could not sustain gainful employment and of her

credibility. (AR 834-35.) On November 13, 2015, the Social Security Administration had determined that Ms. Rossiter was disabled as of June 1, 2014. (AR 1397.) In response to this point, on May 16, 2018, LINA requested that Ms. Rossiter authorize it to obtain her entire Social Security file. (AR 591-92.) LINA's request provided that if LINA did not receive Ms. Rossiter's authorization by June 14, 2018, it would "move forward with the appeal review without requesting the SSDI file." (AR 591.) On May 22, 2018, Ms. Rossiter declined to allow LINA to access her Social Security file, and LINA chose to move forward without it. (AR 795.)

On July 30, 2018, LINA notified Ms. Rossiter that it was upholding the denial of her claim. (AR 583-86.) LINA's decision was primarily based on a review of Ms. Rossiter's medical records by LINA's consulting physician, Dr. Sofia Aksentijevich, and a transferrable skills analysis conducted based on the restrictions found appropriate by Dr. Aksentijevich. (AR 733-57, 759-60.)

Based on her review of Ms. Rossiter's files, Dr. Aksentijevich found the following medically necessary work activity restrictions:

> Because of the impairing condition of osteoarthritis of the thoracic spine, the claimant can occasionally sit, stand, walk, reach at desk level and below the waist, lift/carry/push/pull up to 5 pounds; she is unable to climb ladders, stoop, crouch, or crawl.
>
> Because of the impairing condition of active psoriatic arthritis affecting the hands, left elbow, shoulders, hips, knees, and feet, the claimant can occasionally perform simple and firm grasp, perform fine manipulation, lift/carry/push/pull up to 5 pounds; the claimant is unable to reach overhead, climb stairs, climb ladders, balance, stoop, kneel, crouch, crawl, and use the lower extremities for foot control.

(AR 755.) In her report, Dr. Aksentijevich also stated that she did not need to contact Ms. Rossiter's providers regarding these restrictions because she agreed with their recommendations. (AR 755.) Yet, Dr. Aksentijevich's recommended restrictions clearly conflicted with Ms. Rossiter's providers. All of Ms. Rossiter's treating physicians opined that Ms. Rossiter was incapable of employment in

8

any capacity regardless of the restrictions imposed, and Dr. Kile and Dr. Ahmad specifically noted their agreement with the FCE from March 14, 2018. In her initial report, Dr. Aksentijevich also specifically noted that she agreed with the results of that FCE, which found that Ms. Rossiter was not capable of lifting, carrying, pushing, or pulling any amount. (AR 756, 837-39.)

After being contacted by LINA, however, Dr. Aksentijevich revised her conclusion with regard to the most recent FCE. (AR 756.) Dr. Aksentijevich did not provide any explanation for her reversal of opinion. Instead, she simply wrote that the conclusion that Ms. Rossiter was not capable of lifting or carrying any amount of weight was "not supported by other clinical findings" without identifying such "other clinical findings." (AR 756.) She never provided any explanation or even acknowledged the inconsistency in her recommended restrictions and her purported agreement with the conflicting recommendations of Ms. Rossiter's providers.

Dr. Aksentijevich's recommended restrictions were used in a transferrable skills analysis to examine occupations Ms. Rossiter might have the ability to perform. (AR 759-60). Based on those restrictions, the analysis concluded that Ms. Rossiter's education, training, and abilities were transferrable to the occupations of "Contract Administrator" and "Manager, Department." (AR 759-60.) On that basis, LINA found that Ms. Rossiter no longer satisfied the definition of disability under the Policy and upheld the denial of her LTD benefits. (AR 585.)

### b. Procedural History

On June 25, 2018, Ms. Rossiter filed a complaint against LINA. (Doc. No. 1.) Therein, Ms. Rossiter alleges that LINA wrongfully refused to pay her LTD benefits in violation of the Policy and asserts a claim under ERISA pursuant to 29 U.S.C. § 1132(a)(1)(B). (*Id.*) Notably, at the time of Ms. Rossiter's complaint, LINA still had not issued its decision regarding Ms. Rossiter's appeal.

However, Ms. Rossiter alleged that because LINA failed to issue a decision within the time allotted by 29 C.F.R. § 2560.503-1, she was deemed to have exhausted her administrative remedies under the Plan.  (*Id.* at 2.)  LINA issued its final decision on Ms. Rossiter's administrative appeal on July 30, 2018 (AR 583-86) and filed an answer to the complaint shortly thereafter on August 16, 2018 (Doc. No. 14).

On February 11, 2019, the parties completed the briefing on their cross-motions for judgment on the administrative record.  The matter was then reassigned to the undersigned pursuant to General Order 2019-13 on June 24, 2019.

## II. Standard of Review

Generally, "federal courts review a plan administrator's denial of benefits de novo, 'unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'"  *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001) (quoting *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998)).  If the plan provides for such discretionary authority, then courts "review a decision to deny benefits under 'the highly deferential arbitrary and capricious standard of review.'"  *Id.* (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996)).

In this case, the Policy, by requiring "satisfactory proof" of disability in order for benefits to be paid, provides LINA with sufficient discretionary authority to trigger the arbitrary and capricious standard of review.  *See, e.g.*, *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555-57 (6th Cir. 1998) (holding plan granted discretionary authority to the defendant when it provided that the defendant "shall have the right to require as part of the proof of claim satisfactory evidence . . . that [the claimant] has furnished all required proofs for such benefits").

10

Ms. Rossiter does not appear to dispute this conclusion, but instead contends that a *de novo* standard of review should nonetheless apply because LINA failed to issue a timely decision under ERISA's regulations, namely 29 C.F.R. § 2560.503-1(i). Although there is some dispute over the extent of LINA's untimeliness, LINA admits it issued its decision at least thirteen days late. (Doc. No. 24 at 7.) As such, Ms. Rossiter's claim was deemed exhausted before LINA's final decision. *See* 29 C.F.R. § 2560.503-1(l). Ms. Rossiter asserts this means that LINA failed to exercise its discretionary authority, and there is therefore no decision by LINA that is entitled to deference. (Doc. No. 21 at 10-11.) The Court does not agree, as case law from the Sixth Circuit does not support Ms. Rossiter's argument.

The Sixth Circuit has held that "the standard of review is no different whether the appeal is actually denied or is deemed denied." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988) (holding arbitrary and capricious standard of review applied even though plaintiff's benefits appeal was never acted upon). The Court is aware that the Sixth Circuit has since questioned this approach in dicta. *See Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.3 (6th Cir. 2000) ("[T]here is undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner."). But *Daniel* currently remains the controlling law. *See, e.g.*, *Johnson v. Life Ins. Co. of N. Am.*, No. 5: 16-087-DCR, 2017 WL 412632, at *2 (E.D. Ky. Jan. 30, 2017) (citing *Daniel* to support the conclusion that "an administrator's failure to act on a claimant's appeal does not impact the standard of review"); *Smith v. Columbia Gas of Ohio Grp. Med. Benefit Plan*, 624 F. Supp. 2d 844, 857 (S.D. Ohio 2009) ("Because *Daniel* is still the controlling law on this issue, the correct legal standard to apply to Defendants' termination of Plaintiff Smith's benefits is the arbitrary and capricious standard of review."); *Heffernan v. UNUM*

*Life Ins. Co. of Am.*, No. C–1–97–545, 2001 WL 1842465, at *2 n.1 (S.D. Ohio Mar. 21, 2001) ("One might otherwise read her pleadings to urge a *de novo* standard because UNUM did not decide her claim in a timely manner.  Sixth Circuit case law is adverse to such a position.").  Thus, the Court will apply an arbitrary and capricious standard of review in this case.

Under the arbitrary and capricious standard of review, "the determination of an administrator will be upheld if it is 'rational in light of the plan's provisions.'"  *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (quoting *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 457 (6th Cir. 2003)).  In other words, a decision will be upheld "if it results from a deliberate principled reasoning process' and is supported by 'substantial evidence.'"  *Id.* at 1065 (quoting *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010)).  Although the review is deferential, "[d]eferential review is not no review, and deference need not be abject."  *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005) (quoting *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)).  Indeed, courts must still review "the quality and quantity of the medical evidence and the opinions on both sides of the issues."  *McDonald*, 347 F.3d at 172.  Without such a review, "courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence—no matter how obscure or untrustworthy—to support a denial of a claim for ERISA benefits."  *Id.*

## III.  Analysis

### a.  Evidence Created and Adduced After Deemed Exhaustion and Filing of Suit

Before reaching the merits of Ms. Rossiter's claim, the Court must determine whether it can consider evidence created and adduced after Ms. Rossiter's claim was deemed exhausted and she filed suit.  Ms. Rossiter argues that such material cannot be considered because the administrative

record closed after her claim was exhausted. (Doc. No. 21 at 11 n.3.) LINA asserts review of all the evidence, including its final decision on July 30, 2018, is appropriate because the Court's task is to review the ultimate decision denying Ms. Rossiter's benefits. (Doc. No. 24 at 10-13.)

Neither party cites controlling law on the specific issue. However, several courts, including some in the Sixth Circuit, have considered evidence and decisions by plan administrators in ERISA cases created and adduced after the suit was filed. *See, e.g.*, *Van Winkle v. Life Ins. Co. of N. Am.*, 944 F. Supp. 2d 558, 563 (E.D. Ky. 2013) (permitting peer review reports to remain in the administrative record even though they were created after plaintiff filed his complaint); *Becknell v. Severance Pay Plan of Johnson & Johnson*, 644 F. App'x 205, 212 (3d Cir. 2016) (assessing final decision by administrator even though it was issued four months after the complaint).

Likewise, this Court chooses to consider evidence created and adduced after Ms. Rossiter's claim was technically exhausted and she filed suit. Although LINA failed to comply with the timing requirements of ERISA's regulations, it continued to process Ms. Rossiter's claim after the complaint was filed and issued a final decision on July 30, 2018. LINA's decision came only a month after Ms. Rossiter's complaint and before LINA had even filed an answer. Both parties had access to the relevant material well before any substantive briefing, and the Court had yet to conduct any review of the case. As such, the Court will consider all of the evidence in the administrative record, including LINA's late final decision.

### b. LINA's Denial of Ms. Rossiter's Claim Was Arbitrary and Capricious

LINA asserts its decision terminating Ms. Rossiter's LTD benefits was not arbitrary and capricious because LINA appropriately applied the Policy's definition of disability and relied on the

opinion of a consulting physician and vocational expert in accordance with ERISA regulations.[3] Ms. Rossiter disputes this conclusion and asserts that LINA's review of the medical evidence was selective, that LINA failed to adequately explain its disagreement with Ms. Rossiter's FCEs, treating physicians, and Social Security disability benefits award, and that LINA's decision was motivated by a conflict of interest. The Court agrees with Ms. Rossiter and finds that LINA's decision was arbitrary and capricious.

### i. The Medical Evidence

Based on a review of the medical evidence, the Court concludes that LINA's decision upholding the termination of Ms. Rossiter's LTD benefits was arbitrary and capricious, as it was not the result of a deliberate principled reasoning process or supported by substantial evidence.

LINA's decision relied heavily on Dr. Ahmad's Physical Ability Assessment of January 5, 2018 that was inconsistent with the vast majority of evidence, including Dr. Ahmad's own more recent recommendation. The Sixth Circuit has found similar overreliance on an aberrational report to be arbitrary and capricious. For example, in *Glenn v. Metro. Life. Ins. Co.*, one of the plaintiff's treating physicians completed a benefits evaluation form that indicated the plaintiff could work in a sedentary physical exertion level occupation. 461 F.3d 660, 664 (6th Cir. 2006), *aff'd*, 554 U.S. 105 (2008). Shortly thereafter, however, the physician wrote several letters detailing his opinion that the plaintiff could not return to work in any capacity. *Id.* at 664-65. The administrator then terminated

---

[3] LINA appears to argue that its decision was necessarily supported by substantial evidence simply because it obtained the opinion of a healthcare professional, Dr. Aksentijevich, in accordance with the procedures prescribed by ERISA's regulations for the review of Ms. Rossiter's claim. (Doc. No. 22 at 18-19.) But LINA provides no support for that argument. Courts have found a lack of substantial evidence supporting an administrator's decision despite the administrator's reliance on the opinion of a healthcare professional. *See, e.g.*, *Evans v. UnumProvident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006).

the plaintiff's LTD benefits based on a file review by a consulting physician that largely relied on the treating physician's earlier evaluation form. *Id.* The Sixth Circuit held that the administrator's decision was arbitrary and capricious, finding that the evaluation form "was in direct conflict both with [the treating physician's] earlier assessments and with every detailed written explanation that he gave concerning [the plaintiff's] disability" and that the administrator "offered no explanation for its resolution of the conflict." *Id.* at 672. Likewise, in *Spangler v. Lockheed Martin Energy Systems, Inc.*, the Sixth Circuit rejected an administrator's decision as arbitrary and capricious when it was based entirely on a single Physical Capacities Evaluation that was "cherry-picked" by the administrator and not supported by the rest of the administrative record. 313 F.3d 356, 361-62 (6th Cir. 2002).

Here, LINA repeatedly notes that Dr. Aksentijevich's restrictions were consistent with the January 5, 2018 Physical Ability Assessment form completed by Dr. Amhad. (*E.g.*, Doc. No. 22 at 17; Doc. No. 24 at 14.) Dr. Aksentijevich found that Ms. Rossiter could "occasionally sit, stand, walk, reach at desk level and below the waist, [and] lift/carry/push/pull up to 5 pounds." (AR 755.) That assessment largely coincides with Dr. Ahmad's January 5, 2018 Physical Ability Assessment, which indicated that Ms. Rossiter could occasionally sit, stand, walk, lift and carry up to ten pounds, and push and pull up to five pounds. (AR 1151-52.)

However, Dr. Ahmad's assessment conflicts with all three of Ms. Rossiter's FCEs, which the Sixth Circuit has held are generally a "reliable and objective method of gauging the extent one can complete work-related tasks." *Caesar v. Hartford Life and Acc. Ins. Co.*, 464 F. App'x 431, 435 (6th Cir. 2012). All three FCEs found that Ms. Rossiter did not meet the minimum functional capacity requirements for sitting, standing, or walking. (AR 837, 1004, 1300.) Further, the most recent FCE,

conducted on March 14, 2018, concluded she was not capable of any lifting, carrying, pushing, or pulling, and no FCE has ever found she was capable of lifting more than three pounds. (AR 837-39, 1006, 1302.)

Moreover, in a March 22, 2018 letter, Dr. Ahmad indicated that he agreed with the most recent FCE and criticized LINA's initial termination decision for being inconsistent with the restrictions noted therein. (AR 846.) Although Dr. Ahmad's letter did not specifically address his January 5, 2018 evaluation, his letter was based on his "continued evaluation" of Ms. Rossiter, which further undermines any reliance on his previous evaluation. (AR 846.) Dr. Kile also agreed with the March 14, 2018 FCE, which was consistent with his previous assessments of Ms. Rossiter. (*See* AR 799, 996-97.) Significantly, Dr. Aksentijevich initially stated she agreed with the March 14, 2018 FCE as well, and only reversed her opinion after being contacted by LINA regarding the inconsistency in her report. (AR 756.) Even then, Dr. Aksentijevich did not provide any explanation for her disagreement with the FCE, except for a general statement that the FCE was "not supported by the other clinical findings." (AR 756.) LINA's overreliance on Dr. Ahmad's largely aberrational assessment and its "rejection of the FCE without a reasoned explanation supports a finding that the termination of . . . benefits was arbitrary and capricious." *Caesar*, 464 F. App'x at 435.

LINA's briefs also point to a variety of positive findings from Ms. Rossiter's examinations leading up to the termination of her benefits. But a selective citation to normal findings that ignores evidence of Ms. Rossiter's continuing disability is not enough to justify its decision, even under an arbitrary and capricious standard. *See Reardon v. Prudential Ins. Co. of Am.*, No. 1:05cv178, 2007 WL 894475, at *15 (S.D. Ohio Mar. 21, 2007) ("Through its selective citation of 'normal' objective findings, to the exclusion of pertinent objective and clinical findings which support Ms. Reardon's

limitations based on the combination of her degenerative disc disease, osteoarthritis, and fibromyalgia, Prudential unreasonably failed to give full and fair consideration to plaintiff's claim."). LINA points to notes from several of Dr. Richter's exams in which he found Ms. Rossiter was experiencing less synovitis, that her medication "may be helping," and that her symptoms were out of proportion to objective findings. (AR 848, 1097, 1102.) It also cites Dr. Ahmad's comments from his December 8, 2017 exam regarding a Toradol injection that provided good relief, that Ms. Rossiter appeared to be in "mild discomfort," that she had strength 5/5 throughout, and that she was going to Florida at the end of December. (AR 934, 936.)

However, Dr. Kile criticized LINA's initial termination of Ms. Rossiter's benefits for being based on just such specific instances of transient improvement, and LINA's citations ignore continuing evidence of Ms. Rossiter's impairments during that same time period. (AR 799.) For example, Dr. Richter also noted that Ms. Rossiter had a poor grip, an antalgic gait, "MTP joints bilateral forefoot swelling," "exquisite squeeze mtp tenderness," "mild mcp swelling," and "left 5 finger dactylitis," and that Ms. Rossiter was "uncomfortable due to pain" and "move[d] very slowly on and off [the] exam table." (AR 1097, 1102.) Similarly, Dr. Kile observed that Ms. Rossiter moved "slowly with a shuffled gait" using a walker, had swelling in her hands, and had difficulty manipulating papers that he handed her, and concluded his exam notes with the following: "Psoriatic arthritis-still significant synovitis and impaired movement and ambulation as a result." (AR 1002.)

LINA's selective citations also fail to rebut the fact that all three of Ms. Rossiter's treating physicians concluded that she was incapable of returning to work in any capacity. While "the plan administrator need not accord special deference to the opinion of a treating physician . . . it may not arbitrarily repudiate or refuse to consider the opinions of a treating physician." *Glenn*, 461 F.3d at

671; *see also Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) ("[A] plan administrator may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician.").

Neither Dr. Aksentijevich's review nor LINA's final decision provided any explanation for the disregard of the opinions of Dr. Kile, Dr. Richter, and Dr. Ahmad that Ms. Rossiter was unable to work in any capacity. (AR 799, 846-47.) In fact, Dr. Aksentijevich's report specifically provides that she did not need to contact any of Ms. Rossiter's providers because she *agreed* with their recommendations. (AR 754-55.) While LINA asserts that the opinions of Ms. Rossiter's physicians should be discounted because they did not become her advocate until after the initial termination of her benefits, their conclusions are consistent with their opinions rendered throughout several years of treating Ms. Rossiter that she is disabled from working in any capacity. Dr. Aksentijevich's conflicting statement, along with a lack of any explanation for disregarding the opinions of Ms. Rossiter's physicians, further shows that LINA's decision was arbitrary and capricious.

This deficiency is compounded by LINA's decision to rely on Dr. Aksentijevich's file review rather than conducting a physical exam of Ms. Rossiter despite having the right to do so. *See Calhoun v. Life Ins. Co. of N. Am.*, 665 F. App'x 485, 494 (6th Cir. 2016) ("We have repeatedly found that 'the failure to conduct a physical examination though the benefits plan explicitly reserves that right raises questions about the thoroughness and accuracy of the benefits determination.'") (quoting *Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 550 (6th Cir. 2015)).

Finally, there appears to be an issue with the transferable skills analysis conducted by LINA's vocational expert as well. That analysis concluded that Ms. Rossiter was capable of working as a "Contract Administrator" and "Manager, Department." (AR 760.) Both of these occupations require

the ability to reach in any direction. *See* U.S. DEP'T OF LABOR, EMPLOYMENT & TRAINING ADMIN., SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES 387, 410, C-3 (1993).[4] Dr. Aksentijevich specifically found Ms. Rossiter "is unable to reach overhead," yet the transferrable skills analysis failed to identify or address this conflict. (AR 755.)

In sum, LINA arbitrarily rejected the results of Ms. Rossiter's FCEs and the opinions of her treating physicians, while relying on an aberrational report, a selective review of the medical record, and a potentially defective transferrable skills analysis. Taking all of this into consideration, the Court concludes that LINA's decision to terminate Ms. Rossiter's benefits was arbitrary and capricious.

### ii. Social Security Disability Determination

The Court's conclusion is further supported by LINA's failure to adequately address Ms. Rossiter's Social Security disability benefits award. A Social Security Administration determination, "though certainly not binding, is far from meaningless." *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 294 (6th Cir. 2005). "[T]he failure to mention and rebut the SSDI award . . . is a factor that weighs in favor of finding that the plan administrator's decision was arbitrary and capricious." *O'Callaghan v. SPX Corp.*, 442 F. App'x 180, 185 (6th Cir. 2011). The lack of an explanation is

---

[4] LINA's transferrable skills assessment cited the *Dictionary of Occupational Titles* ("DOT") as part of its analysis, and the Court therefore takes judicial notice of the *Selected Characteristics of Occupations* ("SC"), "which provides additional information with regard to every occupation listed in the DOT." *Crider v. Highmark Life Ins. Co.*, 458 F. Supp. 2d 487, 509 n.13 (W.D. Mich. 2006) ("Even if Teper had not cited the DOT as part of its basis for denying plaintiff's claim, it would nonetheless have been appropriate for this court to take judicial notice of the DOT and SC in this ERISA context.").

also "especially troubling" when the plan administrator requires the claimant to apply for Social Security disability benefits and LTD benefits are offset by the Social Security award. *Id.*

In this case, the Policy required Ms. Rossiter to apply for Social Security disability benefits to avoid a possible reduction in her benefits and entitled LINA to offset Ms. Rossiter's LTD benefits by the amount of any Social Security award. (AR 2114-15.) On November 13, 2015, the Social Security Administration held that, as of June 1, 2014, Ms. Rossiter was disabled—defined as the inability to engage in any substantial gainful activity—and that there were no jobs in the national economy that she could perform. (AR 1389-97.)

When LINA upheld its decision to terminate Ms. Rossiter's LTD benefits, it failed to offer any meaningful explanation as to why it was taking a different position than the Social Security Administration. LINA's termination letter merely provided that "[t]he SSDI award is of lesser relevance to our determination because the criterion used by the Social Security Administration (SSA) is different from the requirements of the policy." (AR 585.) But courts have held that is not an adequate explanation. *See Rist v. Hartford Life and Acc. Ins. Co.*, No. 1:05–cv–492, 2011 WL 2489898, at *25 (S.D. Ohio Apr. 18, 2011), *report and recommendation adopted*, 2011 WL 2559372 (S.D. Ohio June 21, 2011) ("Hartford failed to explain why it reached a conclusion contrary to that of the Social Security Administration's finding of disability, except to say that the standards for determining disability under the Plan and for Social Security are 'different.'"). Indeed, what LINA has construed or interpreted as "different" when comparing the criterion used by the Social Security Administration with the requirements of the Policy, may more accurately be described as more restrictive. The criterion used by the Social Security Administration is whether Ms. Rossiter could not perform any job in the national economy regardless of the level of income associated with the

job.  (AR 1397.)  By contrast, the Policy requires that she be unable to earn 80 percent or more of her indexed earnings.  (AR 2108.)

LINA also makes much of the fact that Ms. Rossiter did not allow LINA to access her entire Social Security file.  Yet, LINA never stated it could not conduct a review of Ms. Rossiter's claim without the file.  Instead, LINA's request provided that if LINA did not receive Ms. Rossiter's authorization by June 14, 2018, it would "move forward with the appeal review without requesting the SSDI file."  (AR 591.)  LINA had a copy of the Social Security Administration's decision, and its failure to provide an explanation for why it disagreed with that decision is an additional factor that supports the Court's finding that LINA's decision was arbitrary and capricious.  *See Rist*, 2011 WL 2489898, at *25 ("Hartford was given a copy of the Social Security decision finding plaintiff disabled, but in its termination letter Hartford failed to explain why it reached a conclusion contrary to that of the Social Security Administration's finding of disability.").

The Court also rejects LINA's argument that Ms. Rossiter's failure to grant LINA access to her Social Security file is an independent ground to uphold its decision.  (Doc. No. 24 at 8-9.)  LINA gave Ms. Rossiter the option to proceed with her appeal without giving LINA access to her Social Security file and did not rely on her refusal to allow access to her file to justify either the initial termination of benefits or its decision on appeal.  The Court will not allow LINA to rely on such a *post hoc* justification for its denial of Ms. Rossiter's claim.  *See, e.g.*, *Castle v. Reliance Standard Life Ins. Co.*, 162 F. Supp. 2d 842, 858-59 (S.D. Ohio 2001) ("[W]ithout respect to the merits of this argument, it fails because her plan administrator did not rely upon it to deny her claim for benefits.").

### iii. Conflict of Interest

The Court's conclusion as to the arbitrary and capricious nature of LINA's decision is reinforced by LINA's conflict of interest as well. A conflict of interest exists when "a plan administrator both evaluates claims for benefits and pays benefits claims." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). The conflict arises because the administrator "incurs a direct expense as a result of the allowance of benefits, and it benefits directly from the denial or discontinuation of benefits." *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 521 (6th Cir. 1998). This conflict of interest should be weighed as a factor in considering whether the administrator's decision was arbitrary and capricious. *Glenn*, 554 U.S. at 115.

LINA is both the decisionmaker and payor for Ms. Rossiter's claims, and LINA therefore acted under a conflict of interest. If LINA had not terminated Ms. Rossiter's LTD benefits, it would have been required to continue making payments for potentially another nineteen years. (*See* AR 2110.) This conflict may have played a part in LINA's treatment of Ms. Rossiter's claim, as it has terminated her benefits three separate times within a relatively short period with little to no evidence that Ms. Rossiter's health has ever improved. Accordingly, LINA's conflict of interest is another factor supporting the Court's holding.

### c. Appropriate Remedy

An award of benefits is appropriate if "a claimant was denied benefits to which he was clearly entitled," while remand to the plan administrator is the correct remedy "where the problem is with the integrity of the plan's decision-making process." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 171 (6th Cir. 2007) (quoting *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006)). Because the Court concludes that LINA's decision was arbitrary and capricious and that Ms. Rossiter

has established that she is disabled under Policy, the Court finds that an award of benefits is appropriate.

**IV.**     **Conclusion**

For the reasons set forth above, Ms. Rossiter's motion for judgment on the administrative record is GRANTED, and LINA's motion for judgment on the administrative record is DENIED. Accordingly, Ms. Rossiter is awarded her LTD benefits, retroactive to the date on which they were terminated.

**IT IS SO ORDERED.**


                                         *s/Pamela A. Barker*
                                         PAMELA A. BARKER
Date:  September 11, 2019           U. S. DISTRICT JUDGE